# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE MICHAEL MACIAS, JR., | CASE NO. 1:13-CV-01819-BAM |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER |
| v. | |
| CITY OF CLOVIS and the following employees of said City's Police Department: SERGEANT J. GOMEZ (ID #5048), CORPORAL C. ARANAS (ID #5196), Officer CESAR GONZALEZ (ID #5422), Officer E. TAIFANE (ID # 5057), Officer A. VELASQUEZ (ID #5445), Officer C. PETERS (ID #5515), STEVE CLEAVER (ID #5469), JAMES KOCH (ID #5136) and DOES 1-25, inclusive, | (Doc. 60) |
| Defendants. | |

## INTRODUCTION

On October 16, 2015, Defendants filed a Motion for a Protective Order stemming from a discovery dispute over the production of peace officer personnel files, policies, and training materials. (Doc. 60). On October 30, 2015, Plaintiff filed an opposition to which Defendants replied on November 6, 2015. (Docs. 63, 64). The Court conducted a hearing on November 13, 2015. Counsel Panos Lagos appeared in person and Counsel Charles Piccuta appeared by telephone on behalf of Plaintiff. Counsel James Weakley and Brande Gustafson appeared in person on behalf of Defendants. Having considered the moving, opposition, reply papers, and the entire file, Defendants' Motion is GRANTED.

**FACTS AND PROCEDURAL BACKGROUND**

A. **Factual History**

Plaintiff is proceeding in this civil rights action against the City of Clovis ("the City") and Officers Cleaver, Gonzalez, Taifane, and Velasquez on claims for alleged unlawful arrest, excessive force, and state law claims. First Amended Complaint ("FAC"), Doc. 31. According to the FAC, Plaintiff's claims arise out of a traffic stop, which ultimately led to Plaintiff's arrest for a violation of California Penal Code § 148(a)(1)–resisting, delaying or obstructing a police officer– and the impound of his motorcycle on September 30, 2012. During Plaintiff's arrest, he alleges that he was aggressively thrown into the back seat of the patrol vehicle which left him in an uncomfortable position. FAC at ¶ 24. While in the backseat, Plaintiff, who was handcuffed behind his back, re-positioned himself and maneuvered his hands over his feet and into his lap. FAC at ¶ 26.

After Plaintiff successfully moved his cuffed hands from behind his back, Officer Cleaver stopped the patrol vehicle and called for back-up. FAC at ¶¶ 25-29. Additional patrol units and officers responded to Officer Cleaver's request and Plaintiff alleges that he was then punched, placed in a "choke-hold," and tasered. FAC at ¶ 34. Plaintiff was later treated by paramedics, transported to Fresno Community Hospital, and booked at Fresno County Jail. FAC at ¶ 41.

B. **Dispute Background**

Prior to filing the instant motion, both parties participated in significant meet and confer efforts that narrowed the disputed discovery to three categories of documents including: (1) personnel records and internal or external investigations for each of the named defendants, (2) policies and procedures adopted at the time of Plaintiff's arrest on September 30, 2012, and (3) training materials in use at the time of Plaintiff's arrest on September 30, 2012. *See* Declaration of Brande Gustafson ("Gustafson Decl.") ¶ 29-31, Doc. 61.

After narrowing the discovery, Defendants agreed to produce all of these requested documents so long as Plaintiff would stipulate to a protective order designating these documents as exclusively for the purpose of this litigation. *See* Doc. 59; Gustafson Decl., ¶ 25. Plaintiff, however, refused to stipulate to a protective order. In challenging the need for a protective order,

Plaintiff argued that "the actions of public employees by a public entity paid for by public tax money" should be transparent for a public purpose. Based on Plaintiff's refusal to enter into a protective order, Defendants now seek an order from the Court requiring that any production of official information be done subject to protective order and only for the purposes of this litigation.

**LEGAL STANDARD**

The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "The key phrase in this definition—'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Nevertheless, Federal Rule of Civil Procedure 26(c) provides that a court may limit discovery to protect from annoyance, embarrassment, oppression, or undue burden or expense. Federal common law recognizes a qualified privilege for official information. *Kerr v. United States Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 198 (9th Cir.1975), *aff'd*, 426 U.S. 394, 96 S. Ct. 2119, 48 L. Ed.2d 725 (1976). Government personnel files are considered official information. *See, e.g., Zaustinsky v. University of Cal.*, 96 F.R.D. 622, 625 (N.D. Cal.1983), *aff'd*, 782 F.2d 1055 (9th Cir.1985). In determining what level of protection to afford the official information privilege, courts balance the interests of the party seeking discovery against the interests of the governmental entity asserting the privilege. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987).

To prevail on a motion for protective order, the party seeking the protection has the burden to demonstrate "particular and specific demonstration[s] of fact, as distinguished from conclusory statements . . . ." *See White v. Smyers*, 2015 U.S. Dist. LEXIS 50479, *9 (E.D. Cal. Apr. 15, 2015) (*citing Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev.

1989). "The rule requires that good cause be shown for a protective order. This puts the burden on the party seeking relief to show some plainly adequate reason therefore. . . . This recognizes that the existence of good cause for a protective order 'is a factual matter to be determined from the nature and character of the information sought by deposition or interrogatory weighed in the balance of the factual issues involved in each action.'" *White*, 2015 U.S. Dist. LEXIS 50479 at * 9 (*quoting* Wright et al., 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed. 2014)).

## DISCUSSION

### A. Public Dissemination of Private Police Information

At the heart of this discovery dispute is whether Defendants must produce the agreed upon discovery without a protective order. Relying on the official information privilege, Defendants object to the production, absent a protective order, of three categories of documents: (1) personnel and investigation records; (2) Clovis Police Department policies and procedures; and (3) departmental training records as explained further below. *See* Doc. 59, (Plaintiff's Second Amended Notice of Motion and Motion for Production of Documents). While Plaintiff agrees that sensitive personal identifying information should be redacted from publicly available documents, Plaintiff objects to the production of documents under a protective order.

#### 1. Personnel and Internal Investigation Records

In the first category of documents, Plaintiff requests the personnel files of each of the defendant officers including documents containing social security numbers, dates of birth, drivers' license numbers, home addresses, financial and credit histories, resumes, medical and psychological information. In addition to the personal identifying information, the personnel files include employment applications, background investigations, reassignment requests, personal history statements, oaths of office, polygraph questionnaires, performance evaluations, resignation letters, and affidavits of psychological screenings all generated as part of the hire process at the Clovis Police Department. Plaintiff also seeks internal affairs investigations, accident review board records, and various citizen complaints.

Defendants argue that production of this information without a protective order would seriously impact the Clovis Police Department's ability to recruit future officers and employees as

it would chill open and honest communication during the internal affairs and recruitment processes. *See* Declaration of Katy Benham ("Lt. Benham Decl.") ¶ 5-6, Doc. 60-2.

### 2.   Policies and Procedures

In the second category of production, Plaintiff requests fifteen policies in effect at the Clovis Police Department during the time of Plaintiff's arrest.[1] Defendants are, however, only seeking a protective order for: Policy Nos. 102 (chief executive officer), 106 (policy manual), 200 (organizational structure), 208 (training policy), 302 (deadly force review), 306 (restraint devices), 308 (control devices and techniques), 340 (disciplinary policy), and 344 (report preparation).

Apart from arguments that many of these policies have little relevancy to Plaintiff's claims or defenses in this case, Defendants agree to produce the requested documents under a protective order, but argue that public disclosure of this information would compromise the safety of officers and the public. *See* Declaration of Brett Hershberger ("Hershberger Decl.") ¶ 5-10, Doc. 60-3.

### 3.   Training Materials

In the final category of documents, Plaintiff requests training materials including lesson plans relating to use of force—arrest and control; Building Searches/Simunitions, Pistol-Fundamentals, Rifle-Perishable Skills; Department Range Training; Department Range Training-Shotgun Course; and Duty Pistol, Rifle Course materials.  (Doc. 61).

Defendants argue that these materials are directly related to officer safety. Therefore, production of this information, without a carefully crafted protective order, would create a substantial risk of physical harm to the Clovis Police officers themselves. *See* Declaration of Curt Fleming ("Lt. Fleming Decl.") ¶ 6, Doc. 60-4.

### 4.   Waiver of Privilege Objections

As a preliminary matter, in addition to the arguments outlined above, Plaintiff contends that Defendants waived their right to assert objections based on the official information privilege because Defendants failed to timely raise the objection in their initial discovery responses and/or Defendants produced an untimely privilege log.

On February 3, 2015, Plaintiff served his Requests for Production of Documents Set One

---

[1] Defendants agree to produce Policy Nos. 100. 104, 316, 400 and 402 without a protective order.

on Defendant City of Clovis. Request No. 9 asked for any Clovis Police Department policies, rules, etc., from 2010 to present and Request No. 10 asked for any departmental training materials, handbooks or manuals from 2010. *See* Declaration of Charles Piccuta ("Piccuta Decl.") ¶ 3, Doc. 63-3. Defendants served their initial responses on March 6, 2015, but omitted responses to Requests Nos. 9 and 10. Plaintiff later submitted an amended response to Requests Nos. 9 and 10 on March 25, 2015. No extensions were requested by Defendants. Plaintiff argues that this twenty-day delay in responding to Requests Nos. 9 and 10 renders Defendants' objections waived. Piccuta Decl. ¶ 4. Defendants also delayed serving their privilege log until May 7, 2015—sixty three days after the March 5, 2015 due date. According to Plaintiff, because Defendants waived their objections, Defendants are not entitled to a protective order for the requested documents.

Federal Rule of Civil Procedure 34 provides that discovery requests must be responded to within 30 days. However, courts are not unanimous on whether the failure to timely respond waives privilege objections. *Enns Pontiac, Buick & GMC Truck v. Flores*, 2011 U.S. Dist. LEXIS 77131 (E.D. Cal. July 12, 2011). When a waiver of objections has been found, it usually has been because the party required to serve the response failed to make any response whatsoever within the time allowed. *See e.g., Davis v. Fendler*, 650 F. 2d 1154, 1160 (9th Cir. 1981) (holding that untimely service of response to interrogatories waives the objections when objection raised fifteen months after the interrogatories had been propounded); *See also, Richmark Corporation v. Timber Falling Consultants*, 959 F. 2d 1468, 1473 (9th Cir. 1992) (stating that failure to object to document requests within the time required constitutes a waiver of any objection when no response was made and objections were not raised in a motion to compel). However, in this case, Plaintiff asserted some objections initially, and then subsequently asserted additional objections in an amended response.

Further, after producing the amended discovery responses, Defendants submitted an approximate 400 page privilege log. At Plaintiff's request, Defendants then agreed to participate in an in-person meet and confer, conducted over a three hour period, in an effort to narrow the scope of documents requested and review the documents detailed in the privilege log. Instead of relying solely on their initial relevancy objections and forcing the Court to resolve the issue,

Defendants produced a detailed privilege log and attempted to work towards a resolution of the discovery issues without judicial intervention. Counsel's delay with respect to the privilege log, therefore, was in part, due to efforts to try and resolve the objections to discovery without overburdening the Court. These efforts are well-taken and the Court will not penalize Defendants for the nominal delay in production of the privilege log.

Given the facts of this case, the privacy rights and officer safety factors are important considerations to determine on the merits. Therefore, this Court will consider Defendants' objections based on the official information privilege even though the objections were raised subsequent to the initial responses to the discovery requests. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (noting that discovery rules are to be accorded a broad and liberal treatment); *accord Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961); *see also Aguilar v. County of Fresno*, 2009 U.S. Dist. LEXIS 107946, 11-13 (E.D. Cal. Oct. 29, 2009) (refusing to find waiver of the privacy privilege where Plaintiff failed to raise a timely objection in their initial discovery response).

### 5. Official Information Privilege

In arguing that disclosure should not occur without a protective order, Defendants invoke the official information privilege. In determining what level of protection should be afforded by this privilege, courts conduct a case-by-case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege.[2] *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987); *Hampton v. City of San Diego*, 147 F.R.D. 227, 231 (S.D. Cal. 1993). In the context of civil rights suits against police departments, this balancing approach should be "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661.

The party invoking the privilege, however, must at the outset make a "substantial threshold showing" by way of a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D.

---

[2] In a typical case, the analysis focuses on whether any disclosure <u>to Plaintiff</u> should be made. The balancing needed by this Court, however, because Defendants have agreed to disclose the documents to Plaintiff, is whether the governmental interest outweighs disclosure to the <u>general public</u>.

Cal. 1995) (citing *Kelly*, 114 F.R.D. at 669); *see also Hampton*, 147 F.R.D. at 230.

> The affidavit or declaration from the agency official must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality . . . , (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Id.* at 230-31 (citing *Kelly*, 114 F.R.D. at 670).

If the party invoking the privilege fails to satisfy this threshold burden the documents in issue should be disclosed. *Soto*, 162 F.R.D. at 613. If the threshold showing requirements are met, the court must weigh whether confidentiality outweighs the requesting party's need for the information. *Hampton v. City of San Diego*, 147 F.R.D. 227, 231 (S.D. Cal. 1993); *see also Kelly*, 114 F.R.D. at 657-58.

In support of their motion for a protective order, Defendants submitted several declarations from Clovis Police Department agency officials including the declarations of Lieutenants Dan Sullivan (Doc. 61-9), Katy Benham (Doc. 60-2), Brett Hershberger (Doc. 60-3), and Curt Fleming (Doc. 60-4). (Docs. 60-2, 60-3, 60-4, 61-9). Collectively, Defendants' declarations explain that the agency officials personally reviewed the confidential information in question. The officials further identified that Clovis Police Department and its officers, as well as the public at large, have an overriding interest in maintaining the confidentiality of the personal information of peace officers, department internal investigations, policies, and training materials. That interest stems from the need to protect sensitive material that has the potential to compromise the privacy and safety of officers, witnesses, arrestees, complainants, and their family members. (Docs. 60-2, 60-3. 60-4).

The Court finds, in reviewing the agency official's declarations, that Defendants have met the threshold requirements. Therefore, the Court will weigh Plaintiff's need for the information against Defendants' interest in confidentiality of the requested relevant information.

**6. Balancing Public and Privacy Interests**

Significantly, the issue before the Court is not whether the confidential nature of the

8

requested documents precludes disclosure to Plaintiff. Defendants agree that the information should be disclosed to Plaintiff, and Plaintiff agrees that disclosure is proper. Thus, Plaintiff will receive the requested documents. The sole issue is whether Plaintiff may disclose the "confidential information to the world." According to Defendants, disclosure of Plaintiff's discovery requests without a protective order would violate significant privacy interests of defendant officers and unrelated third parties such as witnesses, victims, and arrestees. Further, dissemination of this information to the greater public would seriously impact the Clovis Police Department's law enforcement efforts, safety, and the ability to recruit future officers and employees.

Plaintiff responds that there is no reason to enter into a blanket protective order because Defendants have not demonstrated that releasing this discovery to the public will compromise officer safety. According to Plaintiff, there is no credible claim by the City that there will be a weakening of law enforcement programs by disclosure of the requested documents. There is additionally no claim that there is an ongoing investigation or a future investigation that will be jeopardized, compromised, or harmed by the requested information. Plaintiff further has agreed to redact the officers' private information, and therefore there is no need to prevent the public dissemination of this discovery.[3]

Generally, the public has a common law presumptive right of access to "judicial documents," which are items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process. *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 421 (9th Cir. 2011). However, dissemination of confidential discovery documents for non-judicial purposes is unusual and rightly so. The discovery rules are "a matter of legislative grace." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). They compel parties, including third parties, to divulge information "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Id.* at 34. The liberality of this process creates "a significant potential for abuse" such as delay, expense, misuse

---

[3] Before making documents available to the public, Plaintiff agrees that any sensitive personal identifying information should be redacted from public versions of the documents. (Doc. 63 at 9).

of court process and damage to the reputation and privacy of litigants and third parties. *Id.* at 34-35. Courts therefore must be mindful that the purpose of discovery is "to facilitate orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

When ordering disclosure of personal and private officer information, federal courts recognize a right of privacy respecting confidential law enforcement records. *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987). If an individual's privacy is at stake, courts balance "the need for the information sought against the privacy right asserted." *Soto*, 162 F.R.D. at 616. Moreover, "[i]n the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential. . . . However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." *Id*. Further, "a carefully drafted protective order minimizes the impact" of disclosure. *Id.*

Indeed, to handle much of the sensitive information at issue here, courts have routinely endorsed the use of protective orders to prevent disclosure to the general public rather than condone nondisclosure. For example, in *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987), Plaintiff brought an action under 42 U.S.C.S. § 1983, which alleged that defendants, city and police officers, violated his constitutional rights when they used excessive force to arrest him. *Id*. at 655. In discovery, plaintiff sought files concerning his arrest, other incidents of police misconduct, and manuals and policy statements discussing arrest techniques and the use of force. *Id.* Defendants produced plaintiff's crime report but refused to produce the other documents pursuant to the government privilege. *Id.* The court articulated a test for the qualified "official information" privilege that balances competing societal interests: the interests of law enforcement, the privacy interests of police officers or citizens who provide information to or file complaints against police officers, the interests of civil rights plaintiffs, the policies that inform the national civil rights laws, and the needs of the judicial process. *Id.* at 662. Using this balancing test, the Court ordered the production of materials relating to the use of a baton and bodily force in making an arrest, citizen complaints against defendant police officers, and the internal affairs investigative files generated by those complaints. All documents produced were subject to a protective order.

*Id.* at 663.

In *Williams v. Cnty. of Alameda*, 2013 U.S. Dist. LEXIS 122866, 2013 WL 4608473, at *2 (N.D. Cal. 2013), the Court ordered the Alameda County Sheriff's Office to produce internal affairs documents of the named defendant officers, subject to a protective order. 2013 U.S. Dist. LEXIS 122866, 2013 WL 4608473, at *2-3. Similarly, in *Doe v. Gill*, the Court ordered San Leandro to produce internal affairs documents of the named defendant officers, subject to a protective order. *Doe v. Gill*, No. 11-cv-04759 CW (LB), 2012 U.S. Dist. LEXIS 42159, 2012 WL 1038655, at *4 (N.D. Cal. 2012). Finally, in *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995), the Court found that Concord did not meet its "substantial threshold burden" in support of the privilege to preclude discovery to Plaintiff. However, the Court ordered production of internal affairs files, subject to a protective order.

Applying the balancing test of *Kelly* in this case, the Court credits the need for officers and police departments to maintain some degree of confidentiality as expressed in Defendants' supporting declarations. (Docs. 60-2, 60-3. 60-4, 61-9). The reliability of the findings of Clovis Police Department internal investigations is largely dependent upon officers' candor and truthfulness. Further, training materials and policies can reveal information that could be exploited for harmful purposes if disclosed, and officers could be at risk for an increased level of harm. While these privacy concerns are not significant enough to preclude disclosure to Plaintiff, the documents requested should be produced under a protective order to protect the privacy interests of officers, while respecting Plaintiff's right to broad discovery under the Federal Rules.

Additionally, the Court has reviewed the authority cited by Plaintiff. Relying on *Kelly*, Plaintiff argues that "*Kelly* has stressed the strong public interest in uncovering civil rights violations of the type at issue in this case." (Doc. 63 at 19). Indeed, *Kelly* holds that

> As a general proposition, the public interests in the categories favoring disclosure (the policies underlying the civil rights laws, public confidence in the court system, and doing justice in individual cases) clearly outweigh the public interests in favor of secrecy (e.g., not compromising procedures for self-discipline within police forces or the privacy rights of officers or citizen complainants). There is substantial exaggeration of the size of the harm that limited disclosure might do to concededly legitimate law enforcement interests.

11

However, even the Court in *Kelly*—a seminal case on disclosing police materials in civil rights actions—imposed a protective order "under which only lawyers and their consultants and staffs [could] view" the produced material. *Kelly*, 114 F.R.D. at 671. Again in *King v. Conde*, cited by Plaintiff, the Second Circuit compelled the liberal production of police personnel files but concluded that parties "are expected to stipulate with respect to appropriate protective orders limiting revelation to counsel or counsel and client." *King v. Conde*, 121 F.R.D. 180, 198 (E.D.N.Y. 1988). Finally, while Plaintiff also relies on *Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester*, 58 Mass. App. Ct. 1 (Mass. App. Ct. 2003), the facts of that case are materially different. The documents disclosed in *Worcester* were purely administrative with no relation to the safety of officers or other individuals, nor did *Worcester* rely on the official information privilege. Thus, the Court is not persuaded by *Worcester* and *King* to compel a conclusion different than that reached in *Kelly*, *Soto*, *Williams* and *Doe*.

Here, the weight of precedent demonstrates that police officer files and related documents in civil rights cases are disclosed to Plaintiffs pursuant to a protective order, and there is no reason to depart from that reasoning here. Having balanced the public and private interests to determine whether entering a protective order is necessary, the Court finds that, as currently presented, the balance tips in favor of ordering disclosure subject to a protective order. The documents will be produced to Plaintiff pursuant to protective order and will not be available for public dissemination. That conclusion is reached primarily in light of the institutional concerns articulated by Defendants and the risks that the indiscriminate public disclosure poses to police department operations and officer safety. Accordingly, the Court will order Defendants to produce documents responsive to Plaintiff's second amended notice of motion and motion for production of documents (Doc. 59), within fourteen days of the issuing of a protective order in this matter.

**B.   Relevancy**

Finally, Defendants object to Plaintiff's requests for certain departmental documents on the grounds that Plaintiff has not alleged a municipal liability claim against the City of Clovis, nor has he alleged a supervisory liability claim or claim that the City or its supervisors provided deficient training to Officers Cleaver, Gonzalez, Taifane, or Velasquez.

**1.  Documents at Issue**

As summarized by Defendants, and consistent with the Court's review, the challenged discovery at issue is as follows (Doc. 60 at 8-9):

1. Personnel File Audit Trail (Officer Cleaver)
2. Letter Accepting Employment (Officer Cleaver)
3. Job Offer Letter (Officer Cleaver)
4. Bio for Swearing In (Officer Cleaver)
5. Illegal Drug Use Disclosure (Officer Cleaver)
6. Local Criminal Records Check (Officer Cleaver)
7. ECN Polygraph and Investigations Letter (Officer Cleaver)
8. Affidavit of Psychological Screening of Applicants (Officer Cleaver)
9. Copy of Memorandum of Direction of Officer Steve Cleaver (Officer Cleaver)
10. Memorandum of Direction (Officer Cleaver)
11. Motorcycle Enforcement and Safety Certificate of Completion (Officer Cleaver)
12. Reassignment Requests for each officer
13. Citizen Complaint # 13-03 (Officers Gonzalez & Taifane)
14. Policy No. 102 - Chief Executive Officer
15. Policy No. 106 - Policy Manual
16. Policy No. 200 - Organizational Structure and Responsibility
17. Policy No. 208 - Training Policy
18. Policy No. 302 - Deadly Force Review
19. Policy No. 306 - Restraint Devices
20. Policy No. 308 - Control Devices and Techniques
21. Policy No. 340 - Disciplinary Policy
22. Policy No. 344 - Report Preparation, - Building Searches/Simunitions (9/01/2011)
23. In-Service Training Lesson Plan
24. Pistol – Fundamentals Rifle - Perishable Skills (2-11-2010)
25. In-Service Training Lesson Plan
26. Department Range Training (6-21-2012) Lesson Plan
27. Department Range Training - Shotgun Course (6-21-2012) Lesson Plan, and
28. Duty Pistol, Rifle Course (9-26-2012) In-Service Training Lesson Plan

**2.  Scope of Discovery**

The scope of discovery under the Federal Rules of Civil Procedure is broad. *Kelly*, 114 F.R.D. at 668. Federal Rule of Civil Procedure 26 states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

13

Here, there appears to be no real dispute over whether Plaintiff's requests are reasonably calculated to lead to the discovery of admissible evidence. Defendants participated in an earlier meet-and-confer wherein Defendants agreed to produce the documents listed above. Thus, Defendants already conceded that Plaintiff's requests are at least marginally relevant to the subject litigation. As a result, the Court does not accept that Defendants are entitled to the relevancy objection in light of the exhaustive meet-and-confer efforts which resulted in a prior agreement that the documents would be produced. Rather, the Court will take Defendants at their word that the documents have tangible relevance to Plaintiff's case. Additionally, it would be a significant waste of judicial resources to disrupt a discovery agreement extensively negotiated during counsel's exhaustive meet-and-confer.

Finally, given the broad definition of relevancy "in the context of civil rights excessive force cases against police departments," the Court finds that Plaintiff's requests for the above listed documents are relevant to the issues and defenses presented in this action. *Soto,* 162 F.R.D. at 610 ("[I]n the context of civil rights excessive force cases against police departments, plaintiffs may suffer great difficulties if courts impose demanding relevancy standards on them.")

Documents specific to officers Gonzalez, Cleaver and Taifane such as citizen complaints against the officers and completion of motorcycle safety and enforcement procedures are certainly relevant on their face to Plaintiff's claims. In addition, although Plaintiff is no longer pursing a municipal liability claim against the City, the policy and training information listed above could contain useful information that may be admissible at trial regarding the officers' mandated duties, and whether training protocols were followed. Further, because force and restraint devices were used in the course of Plaintiff's arrest, policies and training materials related to control devices and techniques that the officers' may have used (or should have used) on Plaintiff is discoverable information. Accordingly, Defendants' relevancy objection to discovery is overruled and the documents shall be produced subject to a protective order.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS Defendants' Motion for a Protective Order. IT IS HEREBY ORDERED as follows:

1. Defendants are ORDERED to produce the documents listed in Plaintiff's Second Amended Notice of Motion and Motion for Production of Documents (Doc. 59) and detailed in this dispute;

2. Based on this Court's ruling, the Motion to Compel set for December 11, 2015, is MOOT and the hearing on the Motion is VACATED.  (Doc. 56);

3. The parties SHALL meet-and-confer to discuss the scope of the protective order and related redaction of sensitive information and submit a stipulated protective order to govern discovery in this case;

4. Discovery SHALL be produced within fourteen days of the Court's execution of the protective order.

IT IS SO ORDERED.

Dated:   **November 18, 2015**            /s/ *Barbara A. McAuliffe*
                                                 UNITED STATES MAGISTRATE JUDGE